Frank R. Bayger, J.
In January, 1971, an Erie County Grand Jury began an investigation into matters related to the county’s proposed construction of a domed sports stadium. A similar inquiry had been previously commenced by Federal authorities. The county investigation resulted in the return of this indictment charging these defendants with the crimes of conspiracy and bribery. The defendants are members of Buffalo, New York and Houston, Texas, architectural firms which were retained by the county in connection with the proposed construction. *762 This indictment alleges that they conspired with each other and with a certain J. Lloyd Walker, a member of the Buffalo firm who is named as a coconspirator but not as a defendant, to bribe certain members of the Erie County Legislature so as to influence their vote on stadium legislation. A second count alleges that they did in fact solicit and aid Walker’s payment of money to unnamed legislators for that purpose.
During the course of these simultaneous but independently conducted investigations each of these defendants was subpoenaed to appear before both the Federal and State Grand Juries. In each they indicated an intention to refuse to testify or otherwise co-operate with the authorities on the grounds of their constitutional privileges against self incrimination. They were thereupon excused by the State authorities and did not appear before the County Grand Jury. The Federal authorities elected to compel their testimony, however, and each defendant was granted immunity from prosecution pursuant to section 2514 of title 18 of the United States Code. Upon being thus immunized from prosecution and compelled to testify by order of the local United States District 'Court, each of these defendants freely informed the Federal Grand Jury as to their knowledge of and joint participation in the bribery of certain members of the County Legislature.
The Federal investigation resulted in the indictment, trial and conviction of two 'County Legislators for violations of Federal statutes relating to conspiracy and interstate activity violative of State laws relating to bribery. (U. S. Code, tit. 18, §§ 371, 1952.) The defendants Lloyd, Jones and Morris were not called by the United States Attorney to testify upon the Legislator’s trial on the grounds that their testimony would be cumulative and unnecessary to the Government’s case.
The defendants have now moved to ■ dismiss this indictment on the grounds that it refers to matters identical to those about which they were compelled to testify in the Federal investigation and as to which they (were thereupon immunized from prosecution under section 2514. It is their contention that they thereby acquired a ‘ ‘ transactional ’ ’ immunity which is binding upon both State and Federal courts and which totally precludes this indictment or any other prosecution by either State or Federal authorities for any crimes to which their Federally compelled testimony referred.
The defendants are joined and supported in this argument by the United States Department of Justice which has appeared upon this motion as amicus curiae and strenuously urged a dis *763 missal of the indictment upon the same grounds as urged .by the defendants. In oral argument, the Assistant United States Attorney who formerly headed the local Organized Crime Task Force Unit and who personally directed this stadium investigation, argued, with the specific approval of the United States Attorney General, that he had deliberately used section 2514’s transactional immunity pursuant to his department’s advice in an effort to obtain the fullest possible co-operation of these defendants and that he had in fact assured them that that immunity applied to all courts, State and Federal.
With respect to the defendant Stievater and Anderson, the People do not deny that the present indictment refers to the same matters and transactions concerning which those individuals were compelled to testify during the Federal proceedings. That this indictment concerns the identical matters about which the defendants Morris, Jones and Lloyd were also compelled to testify during the Federal investigation has been confirmed by this court’s review of their Federal Grand Jury testimony.*
The People contend, however, that they neither used these defendants’ Federal testimony, nor derived any leads therefrom, *764 nor gained any benefit whatsoever from such testimony. They claim, without contradiction, that the present indictment is the result of a totally independent investigation by the County Grand Jury, unaided in any manner by the earlier Federal inquiry. They also argue with substantial merit that the Federal authorities were constitutionally required to confer nothing more than a “ use and derivative use ” type of immunity upon these defendants in order to compel the desired co-operation and testimony. (Cf. Kastigar v. United States, 406 U. S. 441.) Therefore, while conceding the constitutionality of section 2514 and the fact that it purports to grant transactional immunity and the fact that in a proper case Federal immunity statutes may be binding upon the several .States, the People contend that under the circumstances of this case, to unnecessarily impose such immunity upon a State court so as to bar independent State prosecution for State crimes would be an unconstitutional application of the statute.
Section 2514, pursuant to which these defendants were compelled to testify, provides in pertinent part that:
“ No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding * * # against him in any court.”
This section was intentionally patterned after similarly worded Federal statutes previously held to constitutionally confer complete transactional immunity from State as well as Federal prosecutions. (1968 U. S. Cong. & Adm. News 2112, 2184; and cf. Brown v. Walker, 161 U. S. 591; Adams v. Maryland, 347 U. S. 179; Ullman v. United States, 350 U. S. 422; Reina v. United States, 364 U. S. 507.) Those rulings have been continually reaffirmed by the Supreme Court and their propriety was again recognised by the court in Kastigar v. United States (406 U. S. 441, supra) as recently as May of this year.
Section 2514 itself has been authoritatively held to be a constitutional exercise of Congressional power under the supremacy clause of the Constitution and as such, capable of precluding State as well as Federal prosecution of an immunized witness for any crime to which his testimony referred. (Matter of Parker, 411 F. 2d 1067; Carter v. United States, 417 F. 2d 384; United States v. George, 444 F. 2d 310.)
The foregoing authorities require a dismissal of this indictment and there is nothing in Murphy v. Waterfront Comm. (378 U. S. 52) or Kastigar v. United States (406 U. S. 441, supra) *765 which would require or eveíí allow a contrary conclusion. Indeed, as was mentioned above, those cases reaffirmed the validity of Brown, Ullman and similar cases. Both Murphy and Kastigar were concerned with the minimum extent of immunty which must be afforded a witness before his testimony might be constitutionally compelled over a claim of the Fifth Amendment privilege. Murphy held that that amendment protects State witnesses from Federal as well as State incrimination and Federal witnesses from incrimination under State as well as Federal laws. But since a grant of State immunity could never bind the Federal Government in view of the supremacy clause the court further held that in the case of a State witness the amendment prohibited the Federal Government’s use of his compelled testimony or its fruits in any prosecution against Mm. The question of Federal immunity legislation and its effect upon State prosecutions were not considered in Murphy. That case is therefore inapposite to the case at bar.
Kastigar (supra) was similarly concerned with questions of constitutional law rather than statutory construction. Specifically that case determined that immunity from prosecutorial use and derivative use of compelled testimony as provided by section 6002 of title 18 of the United States Code is co-extensive with the privilege against self incrimination and is therefore sufficient to compel a witness’ testimony. While thus determining the constitutionally minimum immunity that must be afforded a witness before he may be denied the privilege against self incrimination, the court did not pretend to interpret or hold invalid broader immunity provisions such as section 2514. The fact that the Government chose to afford these defendants a greater immunity than Kastigar would require or constitutional considerations demand does not afford.a basis for a denial of tMs motion.
Whether it was constitutionally necessary to grant these defendants full transactional immunity from State and Federal prosecution is not determinative of the issue presented. (Cf. Reina v. United States, 364 U. S. 507, supra.) That Congress may properly provide for such immunity as an aid to the enforcement of Federal statutes relating to interstate crime and that Federal courts and. prosecutors may use that aid in their prosecution of such crimes is firmly established by Brown, Uttman, Reina and similar cases. That their use may impede, restrict and seriously hamper a ¡State’s prosecution of State crimes, perhaps to an ill-advised or inappropriate degree, is to be regretted, but such is the well-established law.
The defendants’ motion is granted and tMs indictment dismissed.

 Pursuant to the permission of the Federal District Court, the following Federal Grand Jury testimohy is made a part of this opinion:
In regard to the defendant Morris:
“ Q. All right. Mr. Morris, one further thing. You understand, do you not, sir, that you are testifying under immunity here granted you by the Attorney General of the Western District of New York? You understand that?
A. Yes, sir.
Q. And, you have consulted this with your attorney on this matter, have you not?
A. Yes, sir.
Q. And, you are, sir, obviously agreeable to giving any further testimony that we require under that agreement?
A. Yes."
In regard to the defendant Lloyd:
“ Q. Mr. Lloyd, do you understand that you are testifying here under immunity?
A. Yes.
Q. You have discussed this matter with your attorney?
A. Yes.
Q. And, you are agreeable and willing to testify under that agreement?
A. Yes.”
In regard to the defendant Jones:
“ Q. Mr. Jones, do you understand that you are testifying here under immunity?
A. Yes, sir, I do.
Q. And, you have discussed this matter with your attorney?
Á. That’s correct.
Q. Then, you are agreeable to giving your testimony under such immunity?
A. That’s right.”